NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JANICE BUCKNER,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2013-3144

---

Petition for review of the Merit Systems Protection Board in No. CH0752120230-I-1.

---

Decided:  December 11, 2013

---

JANICE BUCKNER, of Chicago, Illinois, pro se.

VERONICA N. ONYEMA, Trail Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of counsel was MICHELLE WINDMUELLER, Appellate Attorney, United States Postal Services, of Washington, DC.

---

Before NEWMAN, DYK, and TARANTO, *Circuit Judges.*

PER CURIAM.

Petitioner Janice Buckner appeals the decision of the Merit Systems Protection Board ("Board") sustaining her removal as a U.S. Postal Service information technology manager in Milwaukee, Wisconsin.[1] Because the Board's decision is supported by substantial evidence, and is not arbitrary, capricious, contrary to law, or an abuse of discretion, we affirm.

## BACKGROUND

The factual background is set forth in the findings and rulings of the administrative judge and the Board, based on documentary and testimonial evidence, summarized as follows: Petitioner had been employed by the U.S. Postal Service since October 30, 1993. At the time of the action here appealed, she was serving as an information technology systems manager for the Lakeland District of the Postal Service in Milwaukee, Wisconsin. Petitioner commuted each day from Chicago, Illinois, typically by Amtrak but occasionally by car. During the relevant period, Petitioner was supervised by Anthony Drew and for a brief period by acting supervisor Sally Soderland. Petitioner's assigned schedule was Monday through Friday from 8:00 a.m. to 5:00 p.m., with a one-hour lunch break.

On October 19, 2010, Mr. Drew told employees under his supervision, including Petitioner, that "they were expected to work eight hours a day and that any absence over one hour had to be approved by a leave-request form (SF-2971)." On November 2 and 24 and December 2 of 2010, Petitioner was personally given instructions on

---

[1] *Janice Buckner v. United States Postal Service,* MSPB Docket No. CH-0752-12-0230-I-1 (May 6, 2013).

obtaining approval for absences of over one hour by submitting the leave-request form.

In following up on an incident in late December, 2010 where Petitioner was locked out of her office after arriving late, Mr. Drew learned from Ms. Soderland that Petitioner had been irregularly attending to her assigned office hours. Mr. Drew requested details from Robert Andrews, an information systems specialist whose office was in Petitioner's area. Mr. Andrews sent Mr. Drew a list of seventeen days, beginning in August 2010, when Petitioner appeared to have been absent during business hours. Mr. Drew also personally investigated Petitioner's attendance, using train schedules, badge access records, and observations from colleagues. These findings would later be used to develop the specifications supporting Petitioner's removal.

On January 19, 2011 Mr. Drew met with Petitioner to give her an opportunity to explain her actions. At that meeting Petitioner did not offer any explanation. Another meeting was held on April 12, 2011, and Petitioner again offered no explanation. At that point, Petitioner was placed on "emergency placement" pending completion of an investigation of her alleged attendance discrepancies.

At an interview on June 7, 2011 Mr. Drew gave Petitioner the documentation from the investigation, and Petitioner and a union representative made some general comments. Mr. Drew informed Petitioner that discipline for the offense could include removal, and also that the Postal Service was offering her a level 19 IT Specialist job that was currently open in Chicago, where Petitioner lived, thus avoiding the commute to Milwaukee. Petitioner stated that she would not accept this "downgrade."

On July 27, 2011, Mr. Drew issued a Notice of Proposed Adverse Action – Removal ("Notice"). The Notice stated that "there were serious discrepancies in your timekeeping/leave recording versus your assigned work

schedule," which is "Monday through Friday from 8:00 a.m. to 5:00 p.m. with a one (1) hour assigned lunch break." The Notice set forth nine specifications identifying days that Petitioner did not work the required total of eight hours, and stated that on each of these days, no request was submitted for personal leave. The specifications as set out in the Notice are summarized below.

| Specification | Date | Hours worked, taking into account one-hour assigned lunch |
|---|---|---|
| 1 | October 8, 2010 | 6:00 |
| 2 | October 13, 2010 | 2:10 |
| 3 | October 28, 2010 | 5:56 |
| 4 | October 29, 2010 | 6:00 |
| 5 | December 13, 2010 | 5:57 |
| 6 | December 14, 2010 | 3:10 |
| 7 | December 23, 2010 | 2:03 |
| 8 | December 27, 2010 | 6:00 |
| 9 | December 30, 2010 | 6:00 |

Notice of Proposed Adverse Action – Removal (July 27, 2011). The Notice provided two options for Petitioner to pursue: (1) elect mediation or (2) submit evidence contrary to the specifications directly to a Postal Service human

resources manager. Petitioner did not respond. On December 22, 2011 a human resources manager notified Petitioner that she would be removed, effective December 27, 2011.

Petitioner appealed to the Board. On June 19, 2012 an administrative judge for the Board issued an initial decision affirming all nine specifications as tabulated above, and supporting Petitioner's removal. Petitioner filed a petition for review by the full Board.

On May 3, 2013 the full Board issued a decision sustaining six of the nine specifications and affirming the removal. The Board did not sustain the second, third and fifth specifications because it determined that the administrative judge did not resolve conflicting evidence or make credibility assessments as to those charges. However, the Board held that even if these three specifications were resolved in favor of Petitioner, removal based on the six sustained specifications was within the bounds of reasonableness. This appeal followed.

## DISCUSSION

This court "must affirm the Board's decision unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, obtained without procedures required by rule, law, or regulation, or unsupported by substantial evidence." *Addison v. Dep't of Health & Human Servs.*, 945 F.2d 1184, 1186 (Fed. Cir. 1991); *see* 5 U.S.C. § 7703(c) (2012).

Petitioner challenges each of the six specifications forming the basis for her removal, questioning the weight given by the Board to evidence and factual findings. Petitioner also contends that she did not receive a copy of the Notice in time to reply to the specifications, resulting in harmful procedural error. Finally, Petitioner argues that the deciding official and the Board did not properly

consider the *Douglas* factors in choosing the penalty of removal.

## I. Required Hours per Day

Petitioner's challenges to the first, fourth, eighth and ninth specifications are premised on her assertion that she was required to work 7.5 hours per day, rather than 8 hours. Petitioner relies on the testimony of Sally Soderland, a Financial Analyst for the Postal Service, to support the argument that the normal hours for managers were 8:00 a.m. to 4:30 p.m., i.e., 7.5 hours per day plus a one-hour lunch break.

The Board found that the requirement was 8 hours per day, citing testimony from two managers, Mr. Andrews and Mr. Drew. Additionally, the Postal Service Employee and Labor Relations Manual refers only to an 8-hour workday. Substantial evidence supports the Board's finding that Petitioner was required to work 8 hours per day.

## II. Facility Access Data

Postal Service employees use digital badges for access to parking garages and office facilities. Petitioner argues that the Board improperly relied on digital badge access records because employees are not required to record their presence using their badges, and because employees may use the badges of other employees to enter work areas. The government responds that the Board did not consider such records in isolation, but also considered train schedules, witness testimony, and lack of explanation from Petitioner.

The Board did not rely on the badge evidence alone, but as corroboration of other evidence, including testimony from Petitioner and witnesses. *See J.C. Equip. Corp. v. England*, 360 F.3d 1311, 1315 (Fed. Cir. 2004) ("The trier of fact's responsibility is to determine the weight (if any) to be given all of the evidence, whatever its charac-

ter."). No error has been shown in the presentation of digital badge evidence.

### III. Other Challenges

For the first, fourth, eighth and ninth specifications, the evidence was that Petitioner worked for 6.5 hours or less with a one-hour lunch break. Petitioner argues that these were full work days of 7.5 hours because she did not take a lunch break. The Board found that Petitioner did not testify at the hearing that she worked through lunch. Instead, Petitioner testified that she arrived late on the day of the first specification, and left early on the dates of the fourth and ninth specifications.

As to the first, fourth, sixth and eighth specifications, Petitioner testified that it was her practice to notify Mr. Drew's secretary via email or indicate on her calendar if appointments would prevent her from working a total of eight hours. For example, Petitioner testified that she told Mr. Drew that she needed to take her mother to an appointment on the date of the sixth specification, and additionally darkened that date on her calendar. Petitioner argues that the Board improperly gave no weight to this testimony.

We discern no error on the part of the Board with respect to this testimony. It was not shown that Petitioner obtained approval before her absences, as required by the Employee and Labor Relations Manual. This requirement is posted at the workplace and was made known to Petitioner on several occasions.

Regarding the seventh specification, Petitioner states in her brief that she arrived on time on the day in question. This contradicts Mr. Andrew's testimony that she arrived late and notified her co-worker Ms. Soderland of her late arrival. Petitioner disputes this testimony, arguing that the location of her office made it difficult to determine if she was present. The administrative judge

found that, contrary to Petitioner's argument about the visibility of her office, Ms. Soderland testified that Petitioner's office was locked and the lights were off at 2:00 pm. The Board credited Ms. Soderland's testimony over that of Petitioner, and found that the seventh specification was supported by evidence in the form of digital access data and witness testimony. This court may not reevaluate the credibility of the witnesses. *See Long v. U.S. Postal Serv.*, 968 F.2d 1226, 1229 (Fed. Cir. 1992) ("[T]his court will not 'second-guess a presiding official's credibility determination, based as it was on demeanor . . . .'") (internal citations omitted).

With respect to the ninth specification, Petitioner testified that she arrived at work around 7:40 a.m. and was intending to depart at 3:00 pm; however, when Petitioner learned that her train was delayed until 4:00 pm, she emailed Mr. Andrews telling him that she would depart later. We agree with the Postal Service that even if this specification were resolved in favor of Petitioner, the remaining supported specifications are sufficient to sustain removal. *See Riser v. Dep't of Treasury*, 309 F. App'x 402, 404 (Fed. Cir. 2009) (affirming charge notwithstanding administrative judge's finding that four out of six specifications of that charge were not supported by a preponderance of the evidence).

## IV. Notice

Petitioner states that she did not receive a copy of the Notice in time to reply to the specifications. The Postal Service argues that Petitioner failed to rebut the presumption that the Notice was delivered, and in all events that any error was harmless.

Mr. Drew testified that the Notice was sent to Petitioner by both first class and priority mail, and that the letters were not returned. The Board found that this testimony supported a rebuttable presumption that a letter containing the Notice was delivered to Petitioner,

citing *Foust v. Department of Treasury*, 80 M.S.P.R. 447, 479-80 (1998) ("[E]vidence that a letter was sealed, properly addressed, and deposited in the mail with postage prepaid gives rise to a rebuttable presumption that the letter reached the addressee in due course of the mails."). The Board found that Petitioner failed to rebut this presumption.

Petitioner argues that she offered testimony showing that the first class and priority mail letters were not delivered in time for her to respond to the Notice. Petitioner refers to her pre-hearing submissions, including a statement from her union representative that contained a handwritten note stating that the Notice was not delivered. The Board did not discuss this evidence. The Postal Service argues that these statements were not sworn, and are not competent evidence. *See Jordan v. Dep't of Justice*, 54 M.S.R.P. 609, 611 (1992) ("Sworn statements that are not rebutted are competent evidence of the matters asserted therein. . . . A mere statement (unsworn) by the appellant that his petition was timely filed is not sufficient to meet his burden of proof on timeliness.") (internal citations omitted). We conclude that substantial evidence supports the finding that the mailed Notice was received in time for response.

## V. The *Douglas* Factors

In *Douglas v. Veterans Administration*, the MSPB identified a dozen nonexclusive factors that should be considered for disciplinary penalties. Petitioner asserts that these factors were not given appropriate weight in the Board's decision. For example, the first *Douglas* factor is:

The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, including whether the offense was intentional or technical or inadvertent, or was

> committed maliciously or for gain, or was fre-
> quently repeated;

5 M.S.P.B. 313, 332 (1981). The Board found that Peti-
tioner's "misconduct was repetitive in nature and occurred
after she was specifically warned she was required to
submit a leave-request form any time she was absent
from duty." *Janice Buckner v. United States Postal Ser-
vice*, MSPB Docket No. CH-0752-12-0230-I-1, 11 (June 19,
2012). Mr. Drew testified that morale problems are
created when managers who supervise other employees do
not themselves obey time and attendance rules.

The fourth *Douglas* factor is "the employee's past
work record, including length of service, performance on
the job, ability to get along with fellow workers, and
dependability." *Douglas*, 5 M.S.P.B. at 332. Petitioner
stresses that she had been employed for nineteen years
with no disciplinary history and had received numerous
employment awards, including one nomination for "em-
ployee of the year." In his letter of decision, Mr. Odell
stated that he considered Petitioner's length of service but
determined that the seriousness of Petitioner's conduct
outweighed any mitigating factors.

The fifth *Douglas* factor is "the effect of the offense
upon the employee's ability to perform at a satisfactory
level and its effect upon supervisors' confidence in the
employee's ability to perform assigned duties." *Douglas*, 5
M.S.P.B. at 332. Mr. O'Dell, the deciding official, testified
that dishonesty in reporting time and attendance is a
removable offense, particularly for a manager. He testi-
fied that Petitioner had access to security systems within
the agency and that he had to be able to trust her. Peti-
tioner asserts that there was no evidence that she was
dishonest in reporting her time and attendance. The
Board found that the specifications document several
instances where Petitioner was present for significantly

less than 8 hours, and did not honestly report her time and attendance.

With respect to the tenth *Douglas* factor, the "potential for the employee's rehabilitation," Mr. O'Dell testified that his belief in Petitioner's integrity was broken by her actions and that she had no rehabilitative potential.

The Board considered Petitioner's past work record, supervisory role, job responsibilities, potential for rehabilitation, notice of the rules that were violated, and the seriousness of her misconduct, and found that the agency's removal action should be sustained. Substantial evidence supported the Board's findings, and Petitioner has not shown that this conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 7703(c).

The decision of the Board is affirmed.

**AFFIRMED**

Costs

No costs.